# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| SUE S. WOODS, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | 1:17-CV-1586-VEH |
| LIBERTY NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

On August 10, 1987, Sue Woods and her husband, Fred Woods[1], purchased policy number 027835793 (the "Policy"), a cancer policy, from Liberty National Life Insurance Company ("Liberty National"). The Plaintiffs claim that the agent who sold them the Policy

> represented to Fred prior to the Plaintiffs' purchase of the Policy in 1987 that [the Policy] would cover all costs and expenses arising out of any cancer suffered by Sue after the Policy's inception. Amongst other things, the agent specifically told Fred that the cancer policy the Plaintiffs were purchasing would cover anything Sue and Fred needed it to cover pertaining to any cancer suffered by Sue in the future.

(Doc. 1-1, at 5, ¶11). The Plaintiffs allege that Fred relayed this information to Sue, and

---

[1] In this opinion, these individuals will often be referred to merely as "Sue" and "Fred."

that, based on the agent's representations, Sue and Fred then decided to purchase the policy.

In February 2015, Sue was diagnosed with cancer. The Plaintiffs contend that Liberty National has failed to live up to its promise to pay "anything Sue and Fred needed it to cover pertaining to any cancer suffered by Sue in the future." On August 9, 2017, they filed suit against Liberty National and various "fictitious defendants" in the Circuit Court of Calhoun County, Alabama. (Doc. 1-1). The Complaint alleges that Liberty National is liable for: breach of contract (Count One); fraud (Counts Three, Four, Five); deceit (Count Six); and promissory fraud (Count Seven). The Complaint alleges that the fictitious defendants are liable for breach of contract (Count Two); fraud (Counts Eight, Nine, and Ten); deceit (Count Eleven); and promissory fraud (Count Twelve). As to both Liberty National and the fictitious defendants, the Complaint also sets out a claim for rescission. (Count Thirteen). On September 15, 2017, Liberty National removed the action to this Court. (Doc. 1).

The case comes before the Court on Liberty National's Partial Motion To Dismiss (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8). For the reasons stated herein, the motion will be **GRANTED**.

## II. ANALYSIS [2]

### A. <u>Fictitious Party Practice</u>

Liberty National "moves this Court to dismiss all counts not directed against Liberty National as there is no fictitious party practice in federal court." (Doc. 8 at 2). The Eleventh Circuit has stated:

> As a general matter, fictitious-party pleading is not permitted in federal court. *See, e.g., New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir.1997). We have created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be "at the very worst, surplusage." *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir.1992).

*Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The Plaintiffs concede that Count Two of the Complaint is due to be dismissed because it "does not state a claim against a specific real party using a specific name." (Doc. 9 at 16, n. 4). Accordingly, Count Two will be dismissed.

The Plaintiffs argue that the remaining counts, to the extent directed towards the name of "the specific agent [who] sold them the subject policy," should not be dismissed, because this fictitious party is specifically described. (Doc. 9 at 16; *see also*

---

[2] Since there is no issue as to whether the asserted claims are "plausibly" pled, the Court has omitted its typical motion to dismiss legal standard, which sets out the analysis from *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*").

doc. 9 at 17).³ The Court agrees to the extent that the Complaint describes all persons who "acted as an agent or agency for any named or fictitiously named Defendant herein in the sale of the insurance policy" (doc. 1-1 at 4, ¶5), otherwise identified as "Fictitious Defendants 'G,' 'H,' and 'I'" (doc. 1-1 at 4, ¶5).⁴

B. **The Rule of Repose**

The Eleventh Circuit has written:

> "Alabama's judicially created rule of repose serves to bar claims that arise out of events that are more than twenty years old. *Ex parte Grubbs*, 542 So.2d 927, 930–31 (Ala.1989). Alabama's rule of repose " 'is similar to a statute of limitations, but [is] not dependent upon one,' " and has a greater breadth than any such statute. *McDurmont v. Crenshaw*, 489 So.2d 550, 552 (Ala.1986) (quoting *Boshell v. Keith*, 418 So.2d 89, 91 (Ala.1982)). Unlike a statute of limitations, "the only element of the rule of repose is time." *Boshell*, 418 So.2d at 91. "[The rule of repose] is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured." *Id.* There is some debate in Alabama law concerning the types of claims to which the doctrine is applicable. It is unclear, for example, whether the rule applies to personal injury actions. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1307 (11th Cir.2000) (acknowledging uncertainty about the scope of actions to which the rule of repose applies). However, it is clear that any claim in Alabama courts, brought more than twenty years after the time when it first could have been, is barred if the rule of repose applies. *Boshell*, 418 So.2d at 91. The Alabama Supreme Court articulated the rationale for the rule as follows:

---

³ The Plaintiffs state that they do not remember the name of this person.

⁴ Since the Court ultimately holds that all claims against all of the fictitious defendants are due to be dismissed, it will not strike the other fictitious defendants.

4

> As a matter of public policy ... it has long been the settled policy of this state ... that antiquated demands will not be considered by the courts.... It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years ... to demand an accounting."

*Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1213–14 (11th Cir. 2001) (quoting *Snodgrass v. Snodgrass*, 176 Ala. 276, 58 So. 201, 201–02 (Ala.1912)). "The rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit." *Am. Gen. Life & Acc. Ins. Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004) (citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 129 (2003) (Johnstone, J., writing specially)). "<u>If a plaintiff's actual injury resulting from a tort is the payment of premiums for an insurance policy, the payment of the first premium for the policy establishes the element of damage essential to a claim for the tort.</u>" *Underwood*, 886 So. 2d at 813 (emphasis added) (citing *Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So.2d 580 (Ala.1994), and *Donoghue v. American Nat'l Ins. Co.*, 838 So.2d 1032 (Ala.2002)).

### 1. *The Fraud-Based Claims (Counts Three Through Six and Eight Through Eleven)*

The holding in the *Underwood* case resolves the issue before the Court. Counts Three though Six and Eight through Eleven all sound in some type of fraud, which requires the showing of a reliance by the Plaintiffs upon the Defendant's

5

misrepresentation[5] of a material existing fact which proximately caused the Plaintiffs damage. *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014). According to the Complaint, in 1987, Liberty National misrepresented that the Policy would cover "anything Sue and Fred needed it to cover pertaining to any cancer suffered by Sue in the future." (Doc. 1-1 at 5, ¶ 11). This was a representation of a material fact–the Policy's coverage. The Plaintiffs claim that they relied on this representation to their detriment by purchasing the Policy in 1987, and, beginning in 1987, paying premiums. (Doc. 1-1 at 5, ¶¶ 13-14). Accordingly, all of the essential elements of the Plaintiffs' fraud based claims coexisted in 1987, and the rule of repose began running at that time. *See, Am. Gen. Life and Acc. Ins. Co. v. Underwood*, 886 So. 2d 807, 812 (Ala. 2004) ("The rule of repose begins running on a claim as soon as all of the essential elements

---

[5] In Alabama, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code § 6-5-101; *see also, Hughes v. Hertz Corp.*, 670 So. 2d 882, 885 (Ala. 1995) ("Under § 6–5–101, 'legal fraud' includes misrepresentations of material fact made 'by mistake and innocently,' as well as misrepresentations made 'willfully to deceive, or recklessly without knowledge.'") (quoting Ala. Code § 6-5-101). Counts Three and Eight allege an "intentional" false statement. Counts Four and Nine allege a "reckless" false statement. Counts Five and Ten allege a "mistaken" false statement. Counts Seven and Eleven allege "deceit," which "under §§ 6–5–103 and –104 results from either a willful or a reckless misrepresentation or a suppression of material facts with an intent to mislead." *Hughes*, 670 So. 2d at 888 (internal quotation and citation omitted); *see also*, *Ala. Pattern Jur. Instr.* 18.04 (noting that "deceit" requires a showing that the defendant intentionally stated to the plaintiff that a present or past important fact was true; that the defendant's statement was false; that the defendant knew that the statement was false when it made it and the plaintiff did not know it was false; and that the plaintiff took, or failed to take, some action based on the defendant's statement and was harmed).

of that claim co-exist so that the plaintiff could validly file suit."). Since more than 20 years elapsed between the payment of the first premium and the filing of this lawsuit, the rule of repose bars the fraud-based claims.

The Plaintiffs argue that *Underwood* is distinguishable on its facts because it involved <u>a life insurance policy</u> and not a cancer policy. (Doc. 9 at 8). They state:

> In that context, Woods respectfully suggests that it is essential that this Court recognize the very nature of a cancer policy and that it do so in light of the facts here. Unlike a life insurance policy, which only pays one benefit at the death of the insured, a cancer policy does not begin paying any benefits to the living insured until a diagnosis of cancer. <u>In effect, a cancer policy is not a contract fully performed by both parties until cancer occurs</u>.
>
> <u>For purposes of repose, the "actual injury" suffered by Woods here includes not just premiums paid but also benefits promised but unpaid</u>. Woods did not suffer the latter actual injury until after February of 2015 when Sue Woods first received benefits from Liberty National for her cancer.

(Doc. 9 at 8) (emphasis added). The Plaintiffs cite no authority for this argument.

Contrary to the Plaintiffs' assertion, in this context there is no relevant distinction between a cancer policy and a life insurance policy. Both pay a benefit, whatever that might be, upon the happening of a triggering event, whether that be the contracting of cancer by an insured or the death of an insured. Furthermore, a misrepresentation as to the <u>coverage</u> of either type of policy would necessarily result in "benefits promised but unpaid." Whether or not the contract was "fully performed," and whether or not <u>all</u> of

7

the Plaintiffs' injuries had manifested, the Plaintiffs were injured when, in 1987, they paid the first premium. The rule of repose began running at that time.

The Plaintiffs also argue that the running of the rule of repose was stayed. As stated in *Underwood*:

> "The only circumstance that will stay the running of the 20–year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim." *Boshell*, 418 So.2d at 92. The recognition must be distinct. [*Ballenger v. Liberty Nat. Life Ins. Co.*, 271 Ala. 318, 323, 123 So. 2d 166, 170 (1960)]. Such a recognition will restart the running of the 20–year period. *Hendley v. First Nat'l Bank of Huntsville*, 234 Ala. 535, 537, 176 So. 348, 350 (1937). For example, a partial payment on a mortgage debt is sufficient recognition by the mortgagor of the lien of the mortgage to start a new 20–year repose period running on the mortgagee's claims under the mortgage. *Hendley, supra*. Likewise, a statement in a deed that the property conveyed by the deed is subject to a mortgage is a sufficient recognition of the lien of the mortgage to start a new 20–year repose period running on the mortgagee's right to enforce the lien. *Braun v. Pettyjohn*, 176 Ala. 592, 594–95, 58 So. 907, 908 (1912).

*Underwood,* 886 So. 2d at 812. The Plaintiffs argue that the payment of benefits to them, since February of 2015 when Sue was diagnosed, "started the running again of the statute of repose." (Doc. 9 at 10). However, the payment of benefits was not a "distinct recognition"that the Plaintiffs <u>were promised more than they received</u>, *i.e.* coverage for "anything Sue and Fred needed it to cover pertaining to any cancer suffered by Sue in the future." Instead, it is merely a recognition that they were due

8

<u>some</u> benefits.[6]

## 2. *The Promissory Fraud Claims (Counts Seven and Twelve)*

The Alabama Supreme Court has stated that "[a] claim of promissory fraud is one based upon a promise to act or not to act in the future." *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008) (internal quotations and citations omitted). The claim includes all of the elements of fraud-based claims, plus the following additional elements: "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and [] proof that the defendant had an intent to deceive." *Southland Bank*, 21 So. 3d at 1210 (internal quotations and citations omitted). The Complaint alleges:

> Liberty National, by itself and by and through its authorized agents, in connection with its sale of insurance and the Policy to Sue and Fred, as aforesaid, made promises to the Plaintiffs that it intended not to keep, thereby harming the Plaintiffs. As such, the foregoing statements, acts and omissions of Liberty National, by itself and by and through its authorized

---

[6] As noted by the Defendant:

> If Liberty National had paid "anything Sue and Fred needed it to cover pertaining to cancer" in the past and then stopped doing so, perhaps Plaintiffs would have a point. But here, the very nature of Plaintiffs' claims is that Liberty National does not recognize the existence of their right to payment for "anything" related to cancer. Plaintiffs filed this suit precisely because Liberty National has paid them less than what they claim they were told they would receive. Plaintiffs must concede that this lawsuit would never have been brought if, in fact, Liberty National recognized their right to payment for "anything" related to cancer.

(Doc. 10 at 6-7).

9

agents, in connection with the sale of insurance and the Policy to Sue and Fred, constitute promissory fraud.

(Doc. 1-1 at 12, ¶47 (Count Six); *see also* doc. 1-1 at 16, ¶57 (Count Twelve). This language establishes that the additional elements for Counts Six and Twelve were present in 1987, when the Policy was sold to the Plaintiffs.[7] The rule of repose bars these claims as well.[8]

### 3. *The Rescission Claim (Count Thirteen)*

"Under Alabama law, a claim of "rescission" is equitable in nature and is one asserted by a party to a contract seeking to rescind the agreement because of an adverse party's actions." *Wildfire Grp., LLC v. Prime Ins. Co.*, No. 2:12-CV-847-MHT-PWG, 2015 WL 10015378, at *11 (M.D. Ala. Sept. 22, 2015) (Greene, M.J.), *report and recommendation adopted*, No. 1:12CV847-MHT, 2016 WL 540797 (M.D. Ala. Feb. 9, 2016), *judgment entered*, No. 1:12CV847-MHT, 2016 WL 540828 (M.D. Ala. Feb. 9, 2016); *see also, Ballew v. Charter Realty ERA*, 603 So. 2d 877, 883 (Ala. 1992) (recognizing the "equitable principle of rescission"). In this case, the Plaintiffs argue that the contract should be rescinded because it is unconscionable.

---

[7] As noted previously, all of the elements of the fraud-based claims, which are also elements of the promissory fraud claims, occurred at the time of the payment of the first premium by the Plaintiffs.

[8] To the extent that the Plaintiffs' arguments regarding the fraud-based claims, which the Court addressed in its discussion of those claims, apply to this claim, they are rejected for the reasons stated in the previous section.

(Doc. 1-1 at 16).

There is some question as to whether "unconscionability" can be the basis for <u>affirmative</u> relief since "unconscionability is an affirmative <u>defense</u>, and the party asserting the defense bears the burden of proof." *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 645 (Ala. 2004) (emphasis added). Assuming that unconscionability <u>can</u> be the basis for affirmative relief, the Plaintiffs' rescission claim is barred by the rule of repose. The Alabama Supreme Court has stated:

> This Court has stated that " '[a]n unconscionable ... contractual provision is defined as a ... provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." ' " *Southern United Fire Ins. Co. v. Howard*, 775 So.2d 156, 163 (Ala.2000) (quoting *Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992), quoting in turn *Lloyd v. Service Corp. of Alabama*, 453 So.2d 735, 739 (Ala.1984), and Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). In *Layne v. Garner*, this Court first undertook to announce an explicit standard for determining whether a contract or contractual provision is unconscionable:
>
>> "In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract."
>
> 612 So.2d at 408. "For ease of discussion," this Court has at times reduced the *Layne v. Garner* test to two essential elements: "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining

11

power." *American Gen. Fin., Inc. v. Branch*, 793 So.2d 738, 748 (Ala.2000). In addition, this Court recognizes a distinction between "substantive unconscionability" and "procedural unconscionability." Substantive unconscionability

> " 'relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' "

*Ex parte Thicklin,* 824 So.2d 723, 731 (Ala.2002) (emphasis omitted) (quoting *Ex parte Foster*, 758 So.2d 516, 520 n. 4 (Ala.1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed.1998)). Procedural unconscionability, on the other hand, "deals with 'procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.' " *Thicklin*, 824 So.2d at 731 (quoting *Foster*, 758 So.2d at 520 n. 4).

*Leeman*, 902 So. 2d at 645. Whether the Plaintiffs are alleging procedural or substantive unconscionability, all of the aforementioned elements were present at the time the Plaintiffs purchased the Policy, which was more than 20 years ago.

The <u>only</u> argument made by the Plaintiffs for not applying the rule of repose to their rescission claim is the following:

> [The Plaintiffs allege] that Liberty National does not have a copy of the original cancer policy issued to Sue Woods, alluding to the language stamped on the policy finally received by them stating:
>
>> Liberty National Life Insurance Company does not maintain copies of original copies [sic] that are issued to its customers. This policy is a reproduction of the original policy. **The reproduced policy is a reasonable facsimile of the original; however, it may differ in certain respects. Liberty National Life Insurance Company does not in any way represent or certify that this is an exact duplication of the original policy that was issued.**
>
> [(Doc. 1-1 at 6-7, ¶22) (emphasis added)]. Given Woods alleges that: (1) Woods never received a copy of the original policy issued to Sue Woods, *see Complaint*, ¶ 15; (2) the document Woods finally received from Liberty National some 30 years later purporting to be the purchased policy acknowledges on its face that it is not the original, Liberty National does not have it, and it may differ from the substitute, see *Complaint*, ¶¶ 21-22; and (3) Woods has paid $56,000.00 in premiums, see Complaint, ¶ 14, for $7000.00 of benefits, *see Complaint*, ¶ 19, <u>equity and good conscience demand that the insurance policy in this case be rescinded</u>. To dismiss the claim for rescission based solely on the pleadings at this stage in this litigation would signal permission to cancer policy issuers like Liberty National that in circumstances like these they need not retain any cancer policy that has been in force and in their possession for twenty or more years and proceed to pay later-claimed benefits to such a policy's insured using their discretion.

(Doc. 9 at 14-15). This argument ignores the fact that, unlike a statute of limitations, "the only element of the rule of repose is time." *Boshell*, 418 So.2d at 91. "[The rule of repose] <u>is not affected by the circumstances of the situation</u>, by personal disabilities, or by whether prejudice has resulted or evidence obscured." *Id*. The Plaintiffs have

supplied no authority for the proposition that the rule should be applied any differently for their rescission claims. The rule of repose bars this claim as well.[9]

## III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1. The Motion To Dismiss is **GRANTED**.

2. All counts of the Complaint, except Count One, are **DISMISSED with prejudice**.

**DONE** and **ORDERED** this 4th day of January, 2018.

          **VIRGINIA EMERSON HOPKINS**
          United States District Judge

---

[9] Furthermore, "[a]s a precondition to rescission . . . the plaintiff must tender a return of the consideration within a reasonable time after discovery of the fraud." *Edmondson v. Dressman*, 469 So. 2d 571, 573 (Ala. 1985). The Complaint does not plead, and there otherwise is no indication in this case, that the Plaintiff made such a tender. Accordingly, for this additional reason, the rescission count fails to state a claim upon which relief may granted.